UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WENDALL HALL,

    Plaintiff,

v.                                Case No.:   2:22-cv-530-SPC-KCD

MALINDA MASTERS,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court are Defendant Malinda Masters' Motion for Summary Judgment (Doc. 48), Plaintiff Wendall Hall's Response (Doc. 52), and the summary judgment evidence presented by both parties.

### Background

Hall is an involuntarily committed resident of the Florida Civil Commitment Center (FCCC). Masters is the FCCC's former facility administrator, a position now held by Jon Carner. In his complaint, Hall alleges that on August 24, 2022, the water from the sink in his room smelled and tasted foul, and that when he drank the water it immediately caused cramps, pain, vomiting, diarrhea, migraine headaches, and severe mental anguish. Hall asks the Court to award him $5 million in damages, an

injunction ordering Masters to provide him bottled water, and closure of the FCCC. Masters moves for summary judgment.

The FCCC is on the DeSoto County water system. DeSoto tests the water at FCCC monthly and in the past has notified the facility administrator if there were any issues with the results. (Doc. 48-4 at 2). The FCCC also has the water tested annually by an independent company, Sanders Laboratories. Sanders found no abnormal issues with the water from 2019-2022—they collected the water samples for the 2022 test on September 8, 2022. (*Id.* at 3). Masters testifies she drank the water at FCCC routinely and it tasted good and had no odor. (Doc. 48-5 at 3). Carner and another FCCC employee named Tyre Thomas also testify they drink the water and consider it safe. (Doc. 48-4 at 3-4; Doc. 48-6 at 2).

Hall states in his declaration that Masters, Carner, and Thomas never drink the water at FCCC. (Doc. 52-1 at 8). He also describes the water from August 24, 2022, to the present as brown, dirty, unclean, foul in taste and smell, and contaminated with rust, lead, sulfur, and other harmful substances. (*Id.* at 4). Hall does not state how he knows what chemicals are in the water, except that he can smell sulfur. He claims that when he drank the water on August 24, 2022, it immediately caused him illness, diarrhea, vomiting, bloating, cramps, migraine headaches, neurological disease, neuropathological or neuromuscular disease, severe mental anguish, and depression. (*Id.* at 3).

Hall attempts to refute Masters' evidence about the water quality at FCCC with papers that have no apparent relevance to this case, including a page from a lab report on the water at DeSoto Correctional Institution and two pages from a Pace Analytical laboratory report of unknown provenance. (*Id.* at 15-16, 18). He also submitted a page from a website called Tapsafe that states the water in Arcadia, Florida is safe to drink. (*Id.* at 19-22). Finally, Hall submits information from various sources about a military airfield that once sat on or near the current site of the FCCC. (*Id.* at 23-39). Hall speculates the military contaminated the groundwater, causing the cancer deaths of 50 or more FCCC residents. (*Id.* at 7). Hall does not submit any evidence that Masters ever provided him groundwater from the area around the FCCC rather than water from the DeSoto County water system.

Some facts from August 24, 2022, are unrefuted. Several FCCC residents reported the water appeared darker than normal. (Doc. 48-4 at 3). Hall submitted a resident communication form claiming the water was contaminated with sulfur and bacteria. (Doc. 52-1 at 9). The staff distributed bottled water to the residents. (Doc. 48-4 at 4). A staff member contacted the county and learned the county added chlorine to the water while changing out water tanks, but the water was safe to drink. (*Id.*). FCCC staff posted a memo from Masters in each dorm explaining that while the water was discolored, it was safe to drink and would return to normal the next day. (*Id.* at 4, 9).

3

Hall claims the water at FCCC has caused him a myriad of health problems, but there is no evidence he has ever been diagnosed with any medical issues relating to the water at FCCC. Antoria Blanding, FCCC's Health Services Administrator, reviewed Hall's medical chart and submitted an affidavit. On July 8, 2022, Hall saw a nurse practitioner and was diagnosed with constipation and questionable polyps versus internal hemorrhoids and told to return if his condition worsened. (Doc. 48-7 at 3; Doc. 48-9). Hall saw a doctor at DeSoto County Hospital on August 19, 2022, and complained of chronic abdominal pain with diarrhea. (Doc. 48-10). The doctor recommended a colonoscopy, which was later scheduled. (Doc. 48-10). In a pre-op appointment on August 26, 2022, Hall reported blood in his stool, abdominal pain, and a history of colon polyps and gastroesophageal reflux disease. (Doc. 48-11).

On September 8, 2022, Hall saw Nurse Practitioner C. Reilly after reporting in a sick call that he had diarrhea and cramps from drinking the water. When Reilly told Hall the water incident was over two weeks earlier and lasted maybe one or two days, Hall said the water affected him because he is allergic to Sulfa, an antibiotic. Reilly explained that something in the water that smells like sulfur is not the same as the medication Sulfa. Reilly diagnosed unlikely gastroenteritis and gave Hall a cup for a stool sample. (Doc. 48-13). Hall underwent a colonoscopy on September 15, 2022, which revealed

4

internal hemorrhoids. (Doc. 48-14). Hall saw Nurse Reilly again on October 14, 2022, and complained of cramps and diarrhea—cultures from the stool sample were negative. (Doc. 48-15).

## Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d

739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

Hall files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas,* 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

**Discussion**

Because Hall is a civil detainee, his claims arise under the Fourteenth Amendment rather than the Eighth Amendment. But "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments, and it makes no difference whether [the plaintiff] was a…detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving…detainees." *Keith v. DeKalb Cty., Ga.,* 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (cleaned up).

Courts apply a two-part analysis to challenges to conditions of confinement. A plaintiff must establish an objective component and a subjective component. "Under the objective component, the detainee must prove that the conditions are sufficiently serious to violate the Eighth Amendment: that is, he must show that 'extreme' conditions created an unreasonable risk—one that society chooses not to tolerate—of serious damages to the detainee's future health or safety." *Ellis v. Pierce Cty., Ga.*, 415 F. App'x 215, 217 (11th Cir. 2011) (cleaned up). Under the subjective component, the detainee must show deliberate indifference, which has three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (internal quotations and citation omitted). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Saunders v. Sheriff of Brevard Cty.*, 735 F. App'x 559, 564 (11th Cir. 2018) (internal quotation and citation omitted).

Masters challenges Hall's ability to prove the objective component, the subjective component, and causation. As for the objective element, the parties have submitted competing testimony about the appearance, taste, and smell of the water at FCCC. Carner purported to attach the 2022 report from Sanders Laboratories, but he attached the invoice instead, which does not include the

7

results of the testing. The condition of the water at FCCC—and thus the objective component of Hall's claim—remains in dispute.

Masters does establish her burden of proof on the subjective element. It is undisputed that the water at FCCC comes from the DeSoto County water system, and that the water is tested by the county once a month and Sanders Laboratories once a year. Hall attempts to contest Masters' testimony that she routinely drank the water at FCCC, as well as Carner's and Thomas's testimony that they still regularly drink the water. Hall claims he personally witnessed that all three never drink the water. (Doc. 52-1 at 8). But it is not plausible that Hall could observe every drink of water Masters, Carner, and Thomas drink each day. He can only speculate, and "[c]ontentions based on 'mere speculation and conjecture' cannot defeat summary judgment." *Terrell v. Sec'y, Dep't of Veterans Affairs*, 98 F.4th 1343, 1351 (11th Cir. 2024) (quoting *Cincinnati Ins. Co. v. Metro Props., Inc.*, 806 F.2d 1541, 1544 (11th Cir. 1986)).

Hall fails to contest that Masters received annual laboratory reports on the water at FCCC and communicated with the county when questions about water safety arose, and he fails to plausibly challenge Masters' assertion that she routinely drank the water. Thus, no reasonable jury could find that Masters was subjectively aware of a risk of serious harm posed by drinking the water at FCCC.

Hall also fails to establish causation.  His claim that drinking the water on August 24, 2022, "immediately" caused "ongoing severe diarrhea, ongoing vomiting, bloating, cramps, migraine headaches, neurological disease, neuropathological or neuromuscular disease, (nerves and muscle damages and damage to the nervous system), severe mental anguish and depression" is not plausible.  (Doc. 52-1 at 3).  Nor is it supported by any medical evidence.  On the contrary, Hall's unrefuted medical records show that he suffered from gastrointestinal issues long before August 24, 2022.  And Hall presents no verifying medical evidence to support his claim that drinking the water at FCCC caused him harm.  No reasonable jury could find that Hall has established causation here.

Accordingly, it is now **ORDERED:**

Defendant Malinda Masters' Motion for Summary Judgment (Doc. 48) is **GRANTED**.  This action is **DISMISSED**.  The Clerk is **DIRECTED** to enter judgment in favor of the defendant, terminate any pending motions and deadlines, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on May 29, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record

9